UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
KARINA SIGALOVSKAYA,

                        Plaintiff,                            **AMENDED COMPLAINT**

      -against-

                                             **JURY TRIAL DEMANDED**

SPECIAL AGENT ABIGAIL P. BRADEN, Individually and in her capacity as SPECIAL AGENT, SPECIAL AGENTLUANN WALTER, Individually and in hercapacity as SPECIAL AGENT, SPECIAL AGENT MEGANBUCKLEY, Individually and in her capacity as SPECIAL AGENT, SPECIAL AGENT ROBERT MANCENE, Individually and in his capacity as SPECIAL AGENT,        **15 Civ. 0034 (SLT)(RML)**

                       Defendants.
-------------------------------------------------------------------------------X

        Plaintiff, KARINA SIGALOVSKAYA, by her attorney, Jon L. Norinsberg, Esq., complaining of the defendants, respectfully alleges as follows:

### **PRELIMINARY STATEMENT**

        1.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to Bivens v. Six Unknown NamedAgents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1988, for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

### **JURISDICTION**

        2.     This action is brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1988, as well as the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

        3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff is a citizen of the United States and was at all relevant times lawfully residing in the City and State of New York.

7. At all times hereinafter mentioned, defendants SPECIAL AGENT ABIGAIL BRADEN, SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE, were employed as Special Agents with the ICE, Homeland Security Investigations, and were assigned to the Child Exploitation Group ("CEG").

8. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the United States and/or State orCity of New York.

## FACTS

9. On February 11, 2013, at approximately 8:30P.M., plaintiff KARINA SIGALOVSKAYA was lawfully present at her residence located at 2475 West 16th Street, Apartment 16-J, Brooklyn, NY 11214.

10. At the aforesaid time and place, defendant Special Agents proceeded to pound on plaintiff KARINA SIGALOVSKAYA's door and yell "police."

11. Plaintiff KARINA SIGALOVSKAYA immediately answered the door.

12. Thereafter, defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE proceeded to force their way past plaintiff KARINA SIGALOVSKYA into her apartment, without obtaining her consent to enter the premises.

13. Defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE immediately separated plaintiff KARINA SIGALOVSKAYA from her two children, Nathan Ifraimov, age eleven (11), and Jenna Ifraimov, age five (5).

14. Thereafter, defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE began frantically searching the apartment, yelling "where is your husband?!"

15. Defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE were looking for plaintiff's common law husband, Evidal Ifraimov, whom they intended to arrest.

16. Defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE did not have an arrest warrant for plaintiff KARINA SIGALOVSKAYA.

17. Defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE had not attempted to obtain an arrest

warrant for plaintiff KARINA SIGALOVSKAYA prior to entering her residence on February 11, 2013.

18. The reason why defendants had not attempted to procure an arrest warrant for Ms. Sigalovskaya was because they had *no evidence* that she had engaged in any criminal activity.

19. During the course of defendants' eight month investigation into Evidal Ifraimov forpossession of child pornography,the only evidence that defendants had uncovered was against Mr. Ifraimov – and Mr. Ifraimov alone – and *not* against plaintiff KARINA SIGALOVSKAYA.

20. Specifically, defendants had notuncovered any evidence that plaintiff KARINA SIGALOVSKAYA was in possession of child pornography, or had engaged in any unlawful acts towards any children.

21. Further, defendants had not uncovered any evidence that plaintiff KARINA SIGALOVSKAYA was even *aware* that her husband had an interest in child pornography.

22. In fact, Mr. Ifraimov had gone to great lengths to conceal his interest in child pornography from plaintiff KARINA SIGALOVSKAYA, secretly engaging in such activities only when Ms. Sigalovskaya was outside of the apartment -- either at work, visiting her parents, or shopping -- and as a result, she had no idea that Mr. Ifraimov had engaged in such unlawful behavior.

23. At the time when defendant Special Agents entered the apartment on February 11, 2013, defendants *knew* that they had no evidence against plaintiff KARINA SIGALOVSKAYA.

24. When plaintiff KARINA SIGALOVSKAYA informed defendant Special Agents that her common-law husband, Evidal Ifraimov, was not home, defendants began to unlawfully search plaintiff KARINA SIGALOVSKAYA'S apartment.

25. While defendants were conducting this unlawful search, Evidal Ifraimov called plaintiff KARINA SIGALOVSKAYA's residence. Upon learning who was calling, defendant Special Agents then demanded that plaintiff answer on a speakerphone and speak to him in English.

26. Plaintiff KARINA SIGALOVSKAYA immediately complied with defendants' request.

27. During the telephone conversation Mr. Ifraimov informed defendant Special Agents over speakerphone that he would return to the apartment "in twenty minutes."

28. Thereafter, Anthony J. Colleluori, Esq., an attorney who had been retained by Mr. Ifraimov, called the Sigalovskaya residence and told plaintiff KARINA SIGALOVSKAYA to repeat, out loud, the following phrase to the agents: "LEAVE MY HOUSE NOW, YOU ARE TRESPASSING."

29. Plaintiff KARINA SIGALOVSKAYA did as she was told, and repeated verbatim the words that Mr. Collelouri had instructed her to say. Notwithstanding this directive, however, defendant Special Agents did not leave plaintiff's residence.

30. Rather, defendant Special Agents left the room for approximately ten minutes to confer amongst themselves.

31. Thereafter, defendant SPECIAL AGENT ABIGAIL P. BRADEN ("SA Braden") returned to the room where plaintiff KARINA SIGALOVSKAYA was being held and demanded that plaintiff write out a statement.

32. Plaintiff KARINA SIGALOVSKAYA requested an explanation as to why she needed to write out a statement, but SA Braden refused to provide her with such an explanation.

5

33. At this point, defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE began lobbing accusations at plaintiff, accusing her of "helping a grown man touch a girl inappropriately."

34. Plaintiff KARINA SIGALOVSKAYA was shocked and appalled by this false accusation.

35. At no point in her life had plaintiff KARINA SIGALOVSKAYA ever helped Mr. Ifraimov, or any other "grown man," touch any child in an inappropriate manner.

36. SA Braden then claimed she had proof of Mr. Ifraimov's unlawful activities with children, and that she could show it to Ms. Sigalovskaya.

37. However, when plaintiff KARINA SIGALOVSKAYA asked SA Braden to show her such proof, SA Braden refused to do so.

38. Instead, defendant SA Braden showed plaintiff KARINA SIGALOVSKAYA two redacted and non-pornographic photographs on a cell phone.

39. The redacted photos were of Jenna Ifraimov, plaintiff KARINA SIGALOVSKAYA's five-year-old daughter.

40. The redacted photos showed plaintiff's daughter from the waist up, with a long sleeve shirt on. There was nothing in these redacted photos that appeared sexual, inappropriate or in any manner pornographic.

41. Plaintiff KARINA SIGALOVSKAYA was then asked whether she recognized the girl in these redacted pictures.

42. Plaintiff KARINA SIGALOVSKAYA responded in the affirmative and said yes, she did recognize the girl, it was her daughter Jenna.

6

43. SA Braden then asked whether plaintiff KARINA SIGALOVSKAYA recognized where the photograph was taken.

44. Plaintiff KARINA SIGALOVSKAYA said that it appeared to have been taken inside one of the rooms of her apartment.

45. SA Braden then asked whether plaintiff KARINA SIGALOVSKAYA had taken this particular picture.

46. Plaintiff KARINA SIGALOVSKAYA told SA Braden that she had *not* taken the pictures, and that she rarely, if ever, took pictures of her children inside of her apartment.

47. Notwithstanding this denial, SA Braden later claimed, falsely, that Plaintiff KARINA SIGALOVSKAYA had made a "confession" to her and told her that she was the one who had taken the pornographic pictures of her daughter.

48. Further, SA Braden further claimed, falsely, that Plaintiff KARINA SIGALOVSKAYA had told her that her son, Nathan Ifraimov, participated in taking pornographic pictures of her daughter Jenna.

49. These were outright fabrications by SA Braden.

50. Apart from SA Braden's lies, defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE made false statements about the facts and circumstances surrounding plaintiff KARINA SIGALOVSKAYA's arrest.

51. Further, defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE lied about plaintiff

7

KARINA SIGALALOVSKAYA's alleged incriminating statements that plaintiff had allegedly made in their presence and lied about her alleged inculpatory actions on the night in question.

52. Defendants SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY, and SPECIAL AGENT ROBERT MANCENE then forwarded these false and misleading statements to the United States Attorney's Office in connection with plaintiff KARINA SIGALOVSKAYA's prosecution.

53. Plaintiff KARINA SIGALOVSKAYA had never made *any* of the statements that defendants had falsely attributed to her.

54. Defendants knew that plaintiff had never made such statements to her.

55. As a result of defendants'false "evidence," plaintiff KARINA SIGALOVSKAYA wasarrested and charged with 18 U.S.C. § 2251(a), Sexual Exploitation of Children, and 18 U.S.C. § 2252(a)(4)(B), Certain activities relating to material involving the sexual exploitation of minors.

56. There was no physical evidence connecting plaintiff KARINA SIGALOVSKAYA with the charged offenses.

57. There was no forensic evidence connecting plaintiff KARINA SIGALOVSKAYA with the charged offenses.

58. There was no photographic evidence connecting plaintiff KARINA SIGALOVSKAYA with the charged offenses.

59. There was no documentary evidence connecting plaintiff KARINA SIGALOVSKAYA with the charged offenses.

60. Plaintiff KARINA SIGALOVSKAYA had never, at any time, employed, used, persuaded, induced, enticed, or coerced her own children, or any other children, for that matter, to engage in any sexually explicit activity for any purpose.

61. Plaintiff KARINA SIGALOVSKAYA had never, at any time, produced any visual depictions involving the use of her own children, or any other children, engaging in sexually explicit conduct.

62. Plaintiff KARINA SIGALOVSKAYA had no knowledge whatsoever that her common-law husband, Evidal Ifraimov, had an interest in child pornography or had ever inappropriately touched their daughter.

63. After her arrest, plaintiff KARINA SIGALOVSKAYA was brought downstairs in her building, where a crowd had gathered.

64. Numerous friends and neighbors were present to witness the humiliating spectacle of plaintiff KARINA SIGALOVSKAYA being placed under arrest and taken away in handcuffs.

65. Thereafter, plaintiff KARINA SIGALOVSKAYA was brought to a Federal detention facility in New York County, where she remained all night.

66. While at this facility, plaintiff KARINA SIGALOVSKAYA was forced, against her will, to give DNA samples to law enforcement officials.

67. Thereafter, plaintiff was transported to the United States Courthouse for the Eastern District of New York for her arraignment before the Hon. Cheryl Pollack.

68. Plaintiff KARINA SIGALOVSKAYA was denied bail at her arraignment.

69. Plaintiff KARINA SIGALOVSKAYA was held against her will at the Metropolitan Detention Facility ("MDC") in Kings County for approximately three (3) weeks.

9

70. While incarcerated at MDC, plaintiff KARINA SIGALOVSKAYA was repeatedly subjected to invasive, full-body strip searches.

71. While incarcerated at MDC, plaintiff was repeatedly propositioned by other female inmates.

72. While incarcerated at MDC, plaintiff KARINA SIGALOVSKAYA was exposed to several inmates with communicable diseases.

73. While incarcerated at MDC, plaintiff KARINA SIGALOVSKAYA was denied access to proper medical care and treatment that she needed.

74. As a result of her unlawful incarceration, plaintiff KARINA SIGALOVSKAYA was unable to be with her daughter Jenna when she celebrated her sixth birthday.

75. As a result of her unlawful incarceration, plaintiff KARINA SIGALOVSKAYA was unable to be present when her son Nathan attended his first acting audition in Orlando, Florida.

76. On March 5, 2013 all charges against plaintiff KARINA SIGALOVSKAYA were dismissed on motion by the United States Attorney's Office.

77. The charges were dismissed based upon the complete lack of any evidence against plaintiff KARINA SIGALOVSKAYA. As Judge Irizarry would later state, during the sentencing hearing of Evidal Ifraimov:

> [T]he Government made a determination that the wife *the mother was not involved and did not have any criminal liability or responsibility*, demonstrated by the fact that the Government dropped the charges and has, to date, not pursued any other kind of investigation or accusation or anything else against the mother.
>
> (Tr. at 59).

78. Despite all charges being dismissed, plaintiff KARINA SIGALOVSKAYA was unable to see or even speak to her children for another three (3) months.

79. Due to the unlawful and perjurious conduct of SA Braden, the New York State Administration for Children Services ("ACS") filed a petition claiming plaintiff KARINA SIGALOVSKAYA was unfit as a mother and to permanently revoke her guardianship over her children.

80. Plaintiff was forced to retain the services of Steven Kartegener, Esq., in order to defend herself against these baseless charges and get her children back.

81. Plaintiff KARINA SIGALOVSKAYA paid Mr. Kartegener over $25,000.00 for his legal services.

82. Despite ACS' petition, after three (3) months of making multiple court appearances, plaintiff was finally awarded custody of her children.

83. Thereafter, plaintiff was forced to make multiple court appearance in Family Court for over one (1) year to fight ACS' petition of neglect.

84. While plaintiff KARINA SIGALOVSKAYA has regained full custody of her children, she was required to have ACS visit her apartment twice a month.

85. Due to the unlawful and perjurious conduct of SA Braden, plaintiff KARINA SIGALOVSKAYA was placed on the New York State Sex Offender Registry.

86. As a result of the foregoing, plaintiff KARINA SIGALOVSKAYA spent approximately three weeks in jail, had her children taken from her for over three months, was required to obtain legal counsel and make multiple court appearances in order to regain custody of

11

her children, suffered severe emotional distress, humiliation, deprivation of her liberty, and violation of her constitutional rights.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTSUNDER FEDERAL LAW

87. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "86" with the same force and effect as if fully set forth herein.

88. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

89. All of the aforementioned acts deprived plaintiff KARINA SIGALOVSKAYA of the rights, privileges and immunities guaranteed by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America.

90. The acts complained of were carried out by the aforementioned individual defendants in their capacities as federal officers and investigators acting under state law, with all the actual and/or apparent authority attendant thereto.

91. The acts complained of were carried out by the aforementioned individual defendants in their capacities as municipal officials, pursuant to the customs, usages, practices, procedures, and rules of the United States and/or the State of New York, all under the supervision of ranking officers of said departments.

92. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER FEDERAL LAW

93. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "92" with the same force and effect as if fully set forth herein.

94. As a result of defendants' aforementioned conduct, plaintiff KARINA SIGALOVSKAYA was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

95. As a result of the foregoing, plaintiff KARINA SIGALOVSKAYA, *inter alia,* severe emotional distress, humiliation, deprivation of her liberty and violation of her constitutional rights.

## THIRD CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER FEDERAL LAW

96. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "95" with the same force and effect as if fully set forth herein.

97. Defendants misrepresented and falsified evidence before the United States Attorney.

98. Defendants did not make a complete and full statement of facts to the United States Attorney.

99. Defendants withheld exculpatory evidence from the United States Attorney's Office.

100. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

13

101. Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

102. Defendants acted with malice in initiating criminal proceedings against plaintiff.

103. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

104. Defendants lacked probable cause to continue criminal proceedings against plaintiff.

105. Defendants acted with malice in continuing criminal proceedings against plaintiff.

106. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

107. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, she was put in fear for her safety, her children's safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## FOURTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER FEDERAL LAW

108. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "107" with the same force and effect as if fully set forth herein.

109. Defendants issued legal process to place plaintiff KARINA SIGALOVSKAYA under arrest.

110. Defendants arrested plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

111. Defendants acted with intent to do harm to plaintiff KARINA SIGALOVSKAYA, without excuse or justification.

112. As a result of the foregoing, plaintiff KARINA SIGALOVSKAYA sustained severe emotional distress, humiliation, deprivation of her liberty, and violation of her constitutional rights.

### FIFTH CLAIM FOR RELIEF
### DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL
### UNDER FEDERAL LAW

113. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "112" as if the same were more fully set forth at length herein.

114. Defendants created false evidence against plaintiff KARINA SIGALOVSKAYA.

115. Defendants forwarded false evidence and false information to officials in the United States Attorney's Office, Immigration and Customs Enforcement, and the Department of Homeland Security.

116. Defendants gave false and misleading testimony at various judicial proceedings, resulting in a deprivation of liberty to plaintiff.

117. In creating false evidence against plaintiff KARINA SIGALOVSKAYA, in forwarding false evidence and information to the aforesaid officials, and in providing false and misleading testimony, defendant violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

118. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and she was put in fear for her safety, her children's safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

119. All of the foregoing acts by defendants deprived plaintiff KARINA SIGALOVSKAYA of federally protected rights, including, but not limited to, the right:

15

  A. Not to be deprived of liberty without due process of law;

  B. To be free from seizure and arrest not based upon probable cause;

  C. To be free from unwarranted and malicious criminal prosecution;

  D. Not to have cruel and unusual punishment imposed upon her; and

  E. To receive equal protection under the law.

120. As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of ten million dollars ($10,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of five million dollars ($5,000,000.00).

**WHEREFORE**, plaintiff KARINA SIGALOVSKAYA demands judgment in the sum of tenmillion dollars ($10,000,000.00) in compensatory damages, five million dollars ($5,000,000.00) in punitive damages, plus attorney's fees, costs, and disbursements of this action.

Dated: New York, New York
   February 12, 2016

BY_____
   JON L. NORINSBERG
   Norinsberg@aol.com
   Attorney for Plaintiff
   225 Broadway, Suite 2700
   New York, N.Y. 10007
   (212) 791-5396